**RICOH COMPANY, LTD., Plaintiff,**

**v.**

**HONEYWELL, INC. and Keer Electrical Supply Co., Defendants.**

**Civ. A. No. 92–4970 (AJL).**

United States District Court, D. New Jersey.

March 16, 1993.

475

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, and Kurt E. Richter, Christopher A. Hughes, Mark J. Abate, Alexandra T. Manbeck, Morgan & Finnegan, New York City, for plaintiff.

John N. Bain, Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, Roseland, NJ, and Michael V. Ciresi, Richard L. Gill, Alfred H. Edwall, Jr., Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for defendants.

## OPINION

LECHNER, District Judge.

This is an action for patent infringement brought by plaintiff Ricoh Company, Ltd. ("Ricoh") against defendants Honeywell Inc. ("Honeywell") and Keer Electrical Supply Co. ("Keer") (collectively, the "Defendants"), allegedly arising under 35 U.S.C. § 1 *et seq.* Jurisdiction is alleged under 28 U.S.C. § 1331(a) and 1338(a) and appears to be proper. *See* Complaint (the "Complaint"), filed 25 November 1992, ¶ 5.

Currently before the court is a motion by Defendants to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Minnesota.[1] Also before the court is a motion by Keer for summary judgment pursuant to Fed.R.Civ.P. 56.[2] For the reasons that follow, the motion to transfer is granted. Because this action is transferred to the United States District Court for the District of Minnesota, the motion for summary judgment is not considered.[3]

*Facts*

Ricoh is a Japanese corporation having its principal place of business in Tokyo, Japan. Complaint, ¶ 1; Opp.Brief at 2. Ricoh has a wholly-owned subsidiary, Ricoh Corporation ("Ricoh Corp."), which maintains its principal place of business in West Caldwell, New Jersey.[4] Complaint, ¶ 1; Opp.Brief at 2. According to Ricoh, Ricoh Corp. is the center of its "marketing operation in the United States for all Ricoh products in the Western Hemisphere." Opp.Brief at 2; Asano Decl., ¶ 2. Because of its relationship with Ricoh Corp., Ricoh argues that it "considers New Jersey to be its home base in the United States, from which Ricoh oversees all its

1. In support of the motion for transfer, Defendants have submitted the following: Memorandum in Support of Motion By Defendants Honeywell and Keer to Transfer Pursuant to 28 U.S.C. § 1404 (the "Moving Brief"); Affidavit of William D. Lanyi (the "Lanyi Aff."); Affidavit of Robert B. Leonard (the "Leonard Aff."); Affidavit of Ramon Alvarez (the "Alvarez Aff."); Affidavit of Thomas R. Phillips (the "Phillips Aff."); Reply Memorandum in Support of Motion By Defendants Honeywell and Keer to Transfer Pursuant to 28 U.S.C. § 1404 (the "Reply Brief"); Affidavit of Michael V. Ciresi in Support of Defendants' Motion to Transfer.

In opposition to the motion for transfer, Ricoh has submitted the following: Plaintiff Ricoh Company, Ltd.'s Memorandum In Opposition to Motion By Defendants Honeywell and Keer to Transfer Pursuant to 28 U.S.C. § 1404 (the "Opp.Brief"); Declaration of Ikuhiro Asano (the "Asano Decl."); Declaration of Cliff W. Hamal; Affidavit of Mark J. Abate (the "Abate Aff."). Oral argument was heard on 8 March 1993.

2. In support of the motion for summary judgment, Keer has submitted the following: Defendant Keer Supply Co.'s Memorandum in Support of Its Motion for Summary Judgment; Statement

of Material Facts to Which There is No Genuine Issue; Defendant Keer Electrical Supply Co.'s Reply Memorandum in Support of Its Motion For Summary Judgment (the "Keer Summary Judgment Reply Brief"); Declaration of Alfred H. Edwall, Jr.

In opposition to the motion for summary judgment, Ricoh has submitted the following: Plaintiff Ricoh Company, Ltd.'s Memorandum In Opposition to Defendant Keer Electrical Supply Co.'s Motion For Summary Judgment; Declaration of Brian L. Wamsley; Affidavit of Victor DeVito (the "DeVito Aff."); Declaration of Cliff W. Hamal.

3. Keer has consented to transfer of this action to Minnesota, its motion for summary judgment notwithstanding. Phillips Aff., ¶ 5; Moving Brief at 20 n. 10. In fact, Defendants have specifically suggested that "the court could transfer the claims against both Honeywell and Keer to Minnesota, and have that Court decide the motion for summary judgment on the claims asserted against Keer." Moving Brief at 20 n. 10.

4. Ricoh Corp. is not a party to this suit.

marketing activities in the United States."[5] Asano Decl., ¶ 7.

Honeywell is a Delaware corporation with its principal place of business in Minneapolis, Minnesota ("Minneapolis").[6] Answer (the "Answer"), filed 22 December 1992, ¶¶ 2, 12; Lanyi Aff., ¶ 2. Honeywell is licensed to do business in New Jersey. Complaint, ¶ 2; Answer, ¶ 2. Although Honeywell maintains a sales office for its micro switch division (the "Honeywell Micro Switch Division") in Westfield, New Jersey,[7] all production operations for the Honeywell Micro Switch Division are located in Freeport, Illinois ("Freeport"). Answer, ¶ 2; Lanyi Aff., ¶ 3; Moving Brief at 2. Honeywell has also authorized some New Jersey businesses to distribute its products in New Jersey, including Keer. Complaint, ¶ 3; Answer, ¶ 3. Keer is a Delaware Corporation with its principal place of business in Newark, New Jersey. Complaint, ¶ 4; Answer, ¶ 4.

On 10 August 1982, the United States Patent Office appears to have issued patent number 4,343,768 ("Patent 768") to Ricoh for a device invented by Mitsutera Kimura and described as a "gas detector" (the "Gas Detector").[8] Complaint, ¶ 7; id., Ex. A (copy of Patent 768) at 1; Moving Brief at 3. The Gas Detector employs an electric heater to detect—by measuring variations in electrical resistance caused by contact—the existence of such gasses as carbon monoxide or chlorine. Complaint, Ex. A at 7. The design of the Gas Detector is purported to improve upon prior uses of electric heating devices in gas detectors. Id.

Ricoh contends Honeywell has infringed on Patent 768. Id., ¶ 9. Specifically, Ricoh states:

> Honeywell, through its Micro Switch Division, has committed and continues to commit acts of infringement of [Patent 768] by making, using, selling and offering for sale directly and/or through its authorized distributors in this District and elsewhere, (i) products, including Honeywell model AWM 1000, 2000, 3000 and 5000 series microbridge sensors [(the "Honeywell AWM Sensors")], which are claimed in [Patent 768] and (ii) systems and controllers, such as DeltaNet Microcel Controller systems [("the Microcel System")] and Deltanet Excel Plus Distributed Controllers [(the "Excel System")] [(collectively, the "Honeywell Sensor Control Systems")], which incorporate said products as material components thereof.

5. According to Ricoh:
 Ricoh relies substantially on Ricoh Corp. in New Jersey for the planning, marketing, promotion, distribution and sale of Ricoh products throughout the United States and the rest of the Western Hemisphere. Ricoh and Ricoh Corp. hold product development meetings twice a year, one in New Jersey and one in Tokyo. Ricoh Corp. advises Ricoh on tailoring its products for the U.S. marketplace. In return, Ricoh provides Ricoh Corp. in New Jersey with technical support, quality control assistance and service information. Ricoh Corp. does not independently develop its own products. Ricoh is essentially the sole supplier of goods to Ricoh Corp.
 Asano Aff., ¶ 6. Moreover, Ricoh describes its contact with Ricoh Corp. as follows:
 Ricoh is in constant communication with Ricoh Corp. in New Jersey through daily telephone and fax communications and frequent face-to-face meetings. Ricoh has installed three oversees phone tie links which directly link it to Ricoh Corp. in New Jersey. The number of calls through these lines averages about 1,600 per month. Ricoh's personnel frequently visit Ricoh Corp. in New Jersey. For example, between April 1, 1991 and November 30, 1992, at least 675 Ricoh employees travelled to the United States on Ricoh business and it is estimated that approximately one-half of those visits involved business conducted in New Jersey. The president of Ricoh, Mr. Hiroshi Hamada, visits Ricoh Corp. in New Jersey at least once a year. Visiting Ricoh employees frequently use the Ricoh Corp. facilities as temporary offices and for conferences, meetings and required business activities.
 Id., ¶ 7.

6. The central corporate records of Honeywell are located in Minneapolis. Lanyi Aff., ¶ 2.

7. The Honeywell Micro Switch Division produces numerous models of switches and sensors for use in industrial, commercial, aerospace, ordinance and marine applications. Lanyi Aff., ¶ 3.

8. Honeywell denies that Patent 768 was duly and legally issued to Ricoh. Answer, ¶ 7. According to Honeywell, Patent 768 does not meet the statutory requirements set forth in 35 U.S.C. §§ 102–03, 112 and "is therefore invalid, void, and unenforceable." Id., ¶¶ 14–16.

*Id.* As for Keer, Ricoh alleges that Keer has infringed on Patent 768 by selling and offering for sale Honeywell products, including AWM 2000 and 3000 series microbridge sensors.[9] *Id.,* ¶ 10.

Ricoh further alleges that the actions of both Honeywell and Keer "have been and are being conducted willfully and deliberately with full knowledge of [Patent 768] and in disregard of Ricoh's rights thereunder." *Id.,* ¶ 11. Moreover, Ricoh contends it has been and will continue to be irreparably harmed by Defendants' alleged infringement of Patent 768. *Id.,* ¶ 12. Ricoh requests a declaratory judgment that Patent 768 has been infringed by Defendants, a permanent injunction, treble damages, attorneys' fees and costs. *Id.* at 4–5.

### Discussion

Honeywell argues that Ricoh has brought this litigation in an inappropriate forum, namely, New Jersey. Moving Brief at 1. Specifically, Honeywell states:

> None of the events which gave rise to the alleged infringement occurred within this jurisdiction, and none of the documents and witnesses are in New Jersey. Ricoh's chosen forum would be unduly expensive, inconvenient, and burdensome to Honeywell, and would involve this court's energies in a dispute between two non-residents in which New Jersey has no interest.

*Id.*

### The Honeywell AWM Sensors

The Honeywell AWM Sensors which Ricoh claims infringe on Patent 768 were originally designed in Minneapolis in Honeywell's Sensors and Systems Development Center.

Leonard Aff., ¶ 5; Lanyi Aff., ¶ 5. The sensors are manufactured and sold by the Honeywell Micro Switch Division in Minneapolis. Alvarez Aff., ¶ 2.

According to William Lanyi ("Lanyi"), patent counsel for Honeywell responsible for all intellectual property matters for the Honeywell Micro Switch Division, *see* Lanyi Aff., ¶ 2, all documents relating to the original design of the Honeywell AWM Sensors are located in Minneapolis. *Id.,* ¶¶ 5, 11. Similarly, both Lanyi and Ramon Alvarez ("Alvarez"), General Manager of the Honeywell Micro Switch Division, *see* Alvarez Aff., ¶ 1, represent that documents relating to the production, manufacture and marketing of the Honeywell AWM Sensors are located in either Freeport or in Minneapolis.[10] Lanyi Aff., ¶ 8; Alvarez Aff., ¶ 4.

Lanyi further represents that he has reviewed Ricoh's first set of document requests and "[a]ll documents which appear to be responsive to those requests are located either in Minneapolis ... or Freeport." Lanyi Aff., ¶ 11. Significantly, Lanyi represents that, to his knowledge, "no responsive documents [are] located in New Jersey." *Id.,* ¶¶ 8, 11. Similarly, Alvarez represents that, to his knowledge, Keer has no documents relating to the design and production of Honeywell AWM Sensors at its plant in New Jersey. Alvarez Aff., ¶ 6.

In addition to documents, Honeywell indicates that the majority of key witnesses with respect to the design, production, sales and marketing of the Honeywell AWM Sensors are located either in Minneapolis or in Freeport.[11] Lanyi Aff., ¶ 9; Alvarez Aff., ¶ 3.

---

**9.** According to Thomas R. Phillips, President of Keer, *see* Phillips Aff., ¶ 1, a review of Keer's corporate records has revealed that

> Keer has never sold a Honeywell Model AWM 2000 and/or 3000 series microbridge sensor. Keer has never sold any Honeywell product incorporating a microbridge sensor or mass airflow sensor. Further, Keer has never sold controllers such as a Microcel [System] or an Excel [System].

*Id.,* ¶ 3. Honeywell has confirmed that Keer has not sold any Honeywell AWM Sensors or Honeywell Sensor Control Units which incorporate those devices. *See* Alvarez Aff., ¶ 6.

Despite these representations, Ricoh insists it knows of *one* Honeywell AWM Sensor which

Keer has sold. Opp.Brief at 5; DeVito Aff., ¶¶ 1–9.

**10.** Honeywell has represented that, should this case be transferred to Minnesota, it will transport any documents currently in Illinois to Minnesota at its own expense. Lanyi Aff., ¶ 8.

**11.** These witnesses are located in Minneapolis and in Freeport and include: (1) Alvarez, concerning the production and marketing of the Honeywell AWM Sensors; (2) Richard Gehman, a materials engineer for Honeywell, concerning the engineering and marketing of the Honeywell AWM Sensors; (3) Joel Miller, controller of the Honeywell Micro Switch Division, concerning

For instance, those persons responsible for the original design of the Honeywell AWM Sensors—Robert Higashi, Robert Johnson and Philip J. Bohrer—are located in Minnesota. Lanyi Aff., ¶ 6. Similarly, James Holman, the person who developed the manufacturing process for the Honeywell AWM Sensors, is located in Minneapolis. *Id.*, ¶ 9. Honeywell states that, given the number of witnesses from the Honeywell Micro Switch Division in Illinois who would be witnesses in this litigation, "it would disrupt the Micro Switch Division of Honeywell if these persons were caused to appear in New Jersey." *Id.; accord* Alvarez Aff., ¶ 5. Honeywell further states that "[i]t would be far less disruptive of the Micro Switch Division to transport these individuals to Minneapolis for discovery and trial than to transport these persons to New Jersey."[12] Lanyi Aff., ¶ 10; *accord* Alvarez Aff., ¶ 5.

*The Honeywell Sensor Control Systems*

The Honeywell Sensor Control Systems are products manufactured and sold by the Building Control Business Unit of Honeywell (the "Honeywell Building Control Unit"), which is located at Honeywell's principal place of business in Minneapolis. Leonard Aff., ¶¶ 4, 8. These control systems, which

may incorporate Honeywell AWM Sensors, are designed to control temperature and airflow within a room. *Id.*, ¶ 4; Moving Brief at 3. The Microcel System was designed in Minneapolis with input from Honeywell personnel in Arlington Heights, Illinois ("Arlington Heights"). Leonard Aff., ¶ 6. The Excel System was designed in Arlington Heights. *Id.*

According to Robert Leonard ("Leonard"), patent counsel for Honeywell responsible for intellectual property matters at the Honeywell Building Control Unit, *see id.*, ¶ 2, documents relating to the manufacture and design of Honeywell Sensor Control Systems are located in Minneapolis and in Arlington Heights. *Id.*, ¶¶ 6-7. Leonard further represents that he has reviewed Ricoh's first set of document requests and that "[m]ost of the documents responsive to [these] request[s] with respect to the [Honeywell Sensor Control Systems] are located in Minneapolis and [in] Arlington Heights."[13] *Id.*, ¶ 9. In addition to documents, Honeywell states that "many of the essential witnesses in this litigation" with respect to the Honeywell Sensor Control Units are located in Minneapolis."[14] *Id.*, ¶¶ 5, 8.

---

the sales and financial aspects relating to the Honeywell AWM Sensors; (4) Ronald Sieck, Vice President of Marketing for the Honeywell Micro Sales Division, concerning the marketing the Honeywell AWM Sensors; (5) Thomas Mabrey, Vice President of Sales for the Honeywell Micro Switch Division, concerning sales of the Honeywell AWM Sensors; (6) Thomas Landowski, Vice President of Applied Technology for the Honeywell Micro Switch Division, concerning the engineering and production of the Honeywell AWM Sensors. Lanyi Aff., ¶ 9; Alvarez Aff., ¶ 3. In addition, Honeywell names John Schwartz, Darrell Tessman, Martin Oakes and Theresa Wellman as persons who are knowledgeable in the design, production and marketing of the Honeywell AWM Sensors and who also would be central witnesses. Lanyi Aff., ¶ 9; Alvarez Aff., ¶ 3.

12. Honeywell has represented that it will bear the cost of transporting *any* witnesses from Illinois to Minnesota for discovery and trial purposes. Lanyi Aff., ¶ 9; Moving Brief at 5.

13. As with the Honeywell AWM Sensors, Honeywell has represented it "will transport any documents and witnesses [relating to the Honeywell Sensor Control Systems] not located in Minneapolis to Minneapolis at Honeywell's expense for

discovery and trial." Leonard Aff., ¶ 9; Moving Brief at 5.

14. Specifically, Honeywell identifies the following persons, all of whom appear to be located in Minnesota, as essential witnesses with regard the Honeywell Sensor Control Systems: (1) Manfred Ahle, Vice President of Engineering for the Honeywell Building Control Unit, with purported knowledge of the engineering and technical aspects of the Honeywell Sensor Control Systems; (2) Richard J. Cathcart, Vice President and General Manager of the Honeywell Building Control Unit, with purported knowledge of and general responsibility for the Honeywell Building Control Unit; (3) Jean–Pierre Rosso, President of the Honeywell Building Control Unit, with purported knowledge of and general responsibility for the Honeywell Building Control Unit; (4) Priscilla Wardlow, Vice President of Manufacturing for the Honeywell Building Control Unit, with purported knowledge of the manufacturing process for the Honeywell Sensor Control Systems; (5) Jean Robert Cole, Product Manager for the Microcel System, with purported knowledge of and responsibility for marketing Microcel products; and (6) Robert Rolston, Director of Marketing for the Honeywell Building Control Unit, with purported knowledge of marketing operations at the

As with the documents and witnesses related to the Honeywell AWM Sensors, Honeywell insists that, "in view of the location of witnesses and documents" concerning the Honeywell Sensor Control Systems, transfer to Minnesota "would make this litigation substantially more convenient for Honeywell and less expensive for Honeywell." *Id.*, ¶ 10.

## A. Standard of Review Under 28 U.S.C. § 1404(a)

Section 1404(a) permits a district court to transfer a case to any other district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice...." 28 U.S.C. § 1404(a).[15] The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)); *see also American Tel. & Tel. v. MCI Communications Corp.*, 736 F.Supp. 1294, 1305 (D.N.J. 1990).

■ The terms of the statute suggest three factors must be considered in transferring a case: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 306 (D.N.J.1989); *Derry Finance N.V. v. Christiana Cos.*, 555 F.Supp. 1043, 1045 (D.Del. 1983). In addition, the transferee forum must be one in which the suit "might have

been brought." 28 U.S.C. § 1404(a); *see Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *AT & T*, 736 F.Supp. at 1305; *Sandvik*, 724 F.Supp. at 306.

### B. Private and Public Interests

■ The analysis under section 1404 is flexible and must be made on the unique facts of each case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2343–44, 101 L.Ed.2d 22 (1988); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982); *Van Dusen*, 376 U.S. at 624, 84 S.Ct. at 813. A determination that transfer to another jurisdiction is appropriate represents an "'exercise[ ] of structured discretion by trial judges appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum rather than another.'" *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) [hereinafter *Lony I* ] (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)). Added to that are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora.

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed various factors which should be considered in deciding to transfer.[16] These factors fall into two broad cate-

Honeywell Building Control Unit. Leonard Aff., ¶ 8.

**15.** Section 1404(a) provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

**16.** Although the *Gulf Oil* case involved a motion to dismiss under the doctrine of *forum non conveniens*, courts routinely look to the *Gulf Oil* factors for guidance in section 1404(a) cases. *See Sandvik*, 724 F.Supp. at 308 n. 8. Similarly, the Third Circuit's decisions in *Lony I, Lony v.*

*E.I. Du Pont De Nemours & Co.*, 935 F.2d 604, 609 (3d Cir.1991) [hereinafter *Lony II* ] and *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38 (3d Cir. 1988) [hereinafter *Lacey I* ], which involved motions to dismiss under the doctrine of *forum non conveniens*, are relevant to a motion to transfer under section 1404. Significantly, Federal courts have broader discretion to transfer an action under section 1404(a), than to dismiss under the common law doctrine of *forum non conveniens. Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *All States Freight, Inc. v. Modarelli*, 196 F.2d 1010, 1011 (3d Cir.1952); *Sandvik*, 724 F.Supp. at 307; *Rutherford v. Sherburne Corp.*, 616 F.Supp. 1456, 1463 (D.N.J.1985). *Cf. Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir.), *reh'g denied en banc*

gories. One category includes factors relating to the so-called "private interests" of the parties in the context of the litigation: the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the premises. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. The other category consists of the "public interest" in the administration of courts and the adjudication of cases: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law. *Id.* at 508–09, 67 S.Ct. at 843; *Sandvik,* 724 F.Supp. at 307.

■ The moving party has the burden of persuasion on a motion to transfer. *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 44; *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir.1973). The burden is not on the plaintiff to show that the proposed alternative forum is inadequate. *AT & T,* 736 F.Supp. at 1305. On the contrary, the burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum. *Lacey I,* 862 F.2d at 43–44.

■ In making its decision, a "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that transfer to another venue is appropriate. *Id.* at 39. Among the considerations are whether the moving party submitted adequate data of record to facilitate the appropriate analysis, whether the moving party has met its burden of persuasion, whether the contentions of the plaintiff were adequately considered and whether the relevant private and public interests were both adequately considered and balanced. *Id.* A court must rely on facts which are a matter of record in deciding a motion for transfer. *Plum Tree,* 488 F.2d at 756–57.

(3d Cir.1991) [hereinafter *Lacey II* ]; *Mediterranean Golf, Inc. v. Hirsh,* 783 F.Supp. 835, 840–41 (D.N.J.

### C. Private Interests

■ The primary private interests in this action are the plaintiff's choice of forum and the convenience of the available districts with regard to the witnesses and the documentary evidence of both parties.

### 1. The Ricoh Choice of Forum

■ In a decision involving transfer under section 1404(a), it was stated:

Under the *Gulf Oil* analysis, a plaintiff's choice of forum is presumptively correct. In the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. When a plaintiff chooses his home forum, the choice is "entitled to greater deference."

*Sandvik,* 724 F.Supp. at 307 (citations omitted). Indeed, "unless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed." *Hardaway Constr., Inc. v. Conesco Indus., Ltd.,* 583 F.Supp. 617, 620 (D.N.J.1983); *see also Lony II,* 935 F.2d at 609; *Lacey I,* 862 F.2d at 44.

Nevertheless, a plaintiff's choice of forum is "neither dispositive of the transfer analysis nor is it the only factor to be considered." *AT & T,* 736 F.Supp. at 1306. "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.,* 522 F.Supp. 588, 592 (D.Del.1981). For instance, it is equally well-established that a plaintiff's choice of forum is afforded less deference when the plaintiff has chosen a foreign forum. *Mediterranean Golf,* 783 F.Supp. at 842; *see also Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *AT & T,* 736 F.Supp. at 1306; *Ballard Med. Prods. v. Concord Labs.,* 700 F.Supp. 796, 800 (D.Del.1988); *L.C. Baron, Inc. v. H.G. Caspari, Inc.,* 678 F.Supp. 100, 103 (E.D.Pa.1987); *Clopay Corp. v. Newell Cos.,* 527 F.Supp. 733, 736 (D.Del.1981) (patent case); *Pall Corp. v. Bentley Labs., Inc.,* 523 F.Supp. 450, 452 (D.Del.1981) (same). *Cf.*

1991).

*Lony II,* 935 F.2d at 609 (according less deference does not mean no deference is given to foreign plaintiff's choice of forum).

█ Ricoh argues that its choice of New Jersey as the forum for this action is entitled to heightened deference because "New Jersey is Ricoh's home turf in the United States." Opp. Brief at 6–9. Ricoh bases this argument on the "substantial business connections" of Ricoh to Ricoh Corp. in New Jersey. *Id.; see also supra* n. 5. Specifically, Ricoh states: "Ricoh maintains its U.S. marketing headquarters in New Jersey and conducts all U.S. sales and marketing efforts through Ricoh Corp. from that location." Opp. Brief at 11.

This argument is meritless. As the Complaint squarely states, Ricoh is a Japanese corporation with its principal place of business in Japan. Complaint, ¶ 1. Ricoh maintains no offices, manufacturing facilities or distributing facilities in New Jersey. Put simply, as a foreign corporation, Ricoh is not on its "home turf" in New Jersey. *Mediterranean Golf,* 783 F.Supp. at 842; *L.C. Baron,* 678 F.Supp. at 103.

Ricoh's attempt to bootstrap its position by reference to its connections with Ricoh Corp. is misguided. As Honeywell points out: (1) Ricoh Corp. is not a party to this lawsuit; (2) Ricoh Corp. does not appear to have any proprietary interest in Patent 768; and (3) Ricoh's list of contacts with Ricoh Corp. contains *no* indication that Ricoh Corp. has any relation whatever to Patent 768 or that Ricoh Corp. in any way participated in its design, development or manufacture. *See* Reply Brief at 4. It is implausible to suggest that—in a case involving the design and development of the invention which resulted in Patent 768—Ricoh may rely on the presence of a subsidiary which did not participate in those activities and which has no apparent proprietary interest in the resulting patent.

█ Ricoh's reliance on Ricoh Corp. also ignores the fact that, in New Jersey, parent and subsidiary corporations are distinct legal entities and courts are extremely reluctant to pierce the veil between the two absent compelling circumstances. *See, e.g., State, Dep't of Environmental Protection v. Ventron Corp.,* 94 N.J. 473, 500–01, 468 A.2d 150 (1983); *Lyon v. Barrett,* 89 N.J. 294, 300, 445 A.2d 1153 (1982); *In re Maple Contractors, Inc.,* 172 N.J.Super. 348, 354–55, 411 A.2d 1186 (Law.Div.1979).

Ricoh also ignores the fact that this same argument has been rejected in similar situations. *See, e.g., AT & T,* 736 F.Supp. at 1306; *Sony Corp. v. Quantum Corp.,* 16 U.S.P.Q.2d 1446, 1447 (D.Del.1990). For instance, in *AT & T,* although the plaintiff was a New York corporation with its principal place of business in New York, New Jersey "was the home of every major AT & T division and [was] the center of AT & T's long distance business." 736 F.Supp. at 1297. Nevertheless, the argument that New Jersey was AT & T's home turf was rejected: "[W]hile AT & T maintains a considerable presence in New Jersey, it is a New York corporation with its principal place of business in that state. Therefore, AT & T cannot be said to be entitled to deference due to a plaintiff suing in its home state." *Id.* at 1306. Similarly, in *Sony,* 16 U.S.P.Q.2d at 1447, the court rejected the argument by a Japanese plaintiff in a patent infringement case that its American subsidiary qualified as its "home turf." *Id.* The present home turf argument is indistinguishable from either *AT & T* or *Sony.* Ricoh's argument that its choice of forum is entitled to higher deference is rejected.

██ Disregarding Ricoh's choice of forum is appropriate for an additional reason. When the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference.[17]

---

17. In patent infringement actions, "as a general rule, the preferred forum is that which is the *center of gravity* of the accused activity." *S.C. Johnson & Sons, Inc. v. Gillette Co.,* 571 F.Supp. 1185, 1188 (N.D.Ill.1983) (emphasis added); *accord EMS–American Grilon, Inc. v. DSM Resins U.S., Inc.,* 15 U.S.P.Q.2d 1472, 1475, 1989 WL 230919 (D.N.J.1989); *Levinson v. Regal Ware,* *Inc.,* 14 U.S.P.Q.2d 1064, 1065, 1989 WL 205724 (D.N.J.1989); *Clopay,* 527 F.Supp. at 736; *Stora Kopparberg Corp. v. Crucible, Inc.,* 184 U.S.P.Q. 590, 591 (D.N.J.1974). In finding that "center of gravity," a district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its *production.*" *S.C. Johnson,* 571 F.Supp. at 1188 (em-

*Manasse v. West Hunterdon Transit,* No. 91–4713, 1992 WL 97975 *3 1992 U.S.Dist. LEXIS 6838 *9 (D.N.J. 4 May 1992); *AT & T,* 736 F.Supp. at 1306; *National Mortg. Network, Inc. v. Home Equity Ctrs., Inc.,* 683 F.Supp. 116, 119 (E.D.Pa.1988); *S.C. Johnson,* 571 F.Supp. at 1188.

Put simply, as Honeywell has demonstrated, neither the design nor the development nor the manufacture of the Honeywell products involved in this action occurred in New Jersey.[18] *See supra* at pp. 477–79. On the one hand, the Honeywell AWM Sensors were designed in Minneapolis at the Honeywell Sensors and Systems Development Center and are manufactured in Freeport. Leonard Aff., ¶ 5; Lanyi Aff., ¶ 8. On the other hand, regarding the Honeywell Sensor Control Systems, the Excel System was designed in Arlington Heights, while the Microcel System was designed in Minneapolis. Leonard Aff., ¶ 6. Both systems were and are manufactured by the Honeywell Building Control Unit in both Minneapolis and Arlington Heights. *Id.,* ¶¶ 4, 8. Similarly, the market-

ing strategies for the Honeywell Sensor Control Systems were formulated in both Minneapolis and Illinois. *Id.,* ¶ 8; Lanyi Aff., ¶ 9.

▮▮▮ Ricoh attempts to establish ties between the subject matter of this litigation and New Jersey by pointing to (1) 503 Honeywell AWM Sensors which Honeywell appears to have sold in New Jersey in 1992 and (2) a single Honeywell AWM Sensor which was allegedly sold by Keer in New Jersey.[19] To argue that these activities establish sufficient ties to New Jersey, particularly in light of the activities which occur and have occurred in Minneapolis, Illinois and probably Japan, is simply disingenuous.

Honeywell AWM Sensors are sold nationwide by Honeywell. Reply Brief at 10 (citing Stipulation Between the Parties, ¶¶ 6, 10). The 503 such units sold in New Jersey represent an exceedingly small proportion of those nationwide sales, and generated a revenue of only $14,000.[20] *Id.* In the large picture,

phasis added). Appropriate considerations include the location of a product's development, testing, research and production. *Id.* Also relevant is the place where marketing and sales decisions were made, rather than where limited sales activity has occurred. *Id.*

18. Moreover, Ricoh has failed to submit any factual affidavits which indicate that research and/or development of the Gas Detector—the product allegedly infringed by Honeywell—occurred in New Jersey. This being the case, and given that (1) Mitsutera Kimura, the inventor of the Gas Detector, is a Japanese citizen and (2) Ricoh is a Japanese corporation, it is reasonable to assume that research and development of the Gas Detector occurred in Japan.

19. Although Ricoh mentions Honeywell's Micro Switch Division sales office in New Jersey, it does not argue (nor does it appear) that any design, development, manufacturing or marketing decisions were made at this New Jersey office with regard to Honeywell's allegedly infringing sensor products. *See* Opp. Brief at 3–4.

Ricoh does argue that New Jersey is the proper forum for this case because "Honeywell has a strong and pervasive presence in New Jersey." Opp. Brief at 3–4, 9, 20. Although Honeywell concedes a presence and agrees that it is subject to personal jurisdiction in New Jersey, *see* Reply Brief at 13–14, 17, Honeywell correctly states that these considerations are immaterial to this motion for transfer. Put simply, Ricoh appears

to be confusing transfer pursuant to 28 U.S.C. § 1406(a) and transfer pursuant to 28 U.S.C. § 1404(a). Under the former section, transfer is appropriate when venue is improper, often because personal jurisdiction is lacking over a defendant. *See* 28 U.S.C. § 1406(a). Section 1406(a) is not relevant to this case. In contrast, under Section 1404(a), the transfer provision relevant to this case, transfer is appropriate when a different judicial district is more convenient for the parties and witnesses and when the interests of justice would be served by transfer. *See* 28 U.S.C. § 1404(a). A Section 1404(a) analysis varies from case to case, depending on such factors as the location of documents and witnesses, and the locus of actions which form the basis of the complaint. *See infra* at pp. 23–29. Simply because a party conducts business and is subject to personal jurisdiction within a particular judicial district is of limited relevance to a transfer motion under 28 U.S.C. § 1404(a).

20. Regarding the alleged sale by Keer of a Honeywell AWM Sensor, it is meritless to suggest that a single sale, generating a revenue of $67.50, has any significance in determining the center of gravity in this case. In fact, because Keer cancelled the order, refunded the purchase price and never delivered the sensor after it was notified by Honeywell that it was not authorized to sell Honeywell AWM Sensors, the parties vigorously contest whether any such sale took place. Reply Brief at 11; Keer Summary Judgment Reply Brief at 4–7. Moreover, Keer has no information—documentary or testamentary—regarding

these sale activities in New Jersey are insignificant and do not establish New Jersey as the center of gravity for Honeywell's allegedly infringing activities. Nor do these sale activities change the fact that the central and essential activities relevant to this lawsuit—the design, research, development and marketing of the Honeywell AWM Sensors and the Honeywell Sensor Control Systems—occurred outside of New Jersey. *See S.C. Johnson,* 571 F.Supp. at 1188 (limited sales activity in chosen forum, consisting of sale of over 100,000 units, was not sufficient to retain jurisdiction in patent infringement action when development, testing, research and production of allegedly infringing product occurred elsewhere).

Because Honeywell has demonstrated that the operative facts to this litigation are not centered in New Jersey, Honeywell has demonstrated that Ricoh's choice of New Jersey as the forum for this litigation is entitled to lessened deference. *AT & T,* 736 F.Supp. at 1306; *Pall,* 523 F.Supp. at 452. This lessened deference is bolstered by the fact that Ricoh is a foreign corporation suing in a foreign forum.[21] *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Mediterranean Golf,* 783 F.Supp. at 842; *AT & T,* 736 F.Supp. at 1306; *Sandvik,* 724 F.Supp. at 307; *Pall,* 523 F.Supp. at 452.

### 2. *Access to Sources of Proof*

■ The second relevant factor under the private interest analysis is the convenience of the available districts concerning the witnesses and the documentary evidence of both parties. As the Supreme Court has stated:

> To examine "the relative ease of access to sources of proof," and the availability of

the validity of Ricoh's Patent 768 for the Gas Detector or for the design, development and manufacture by Honeywell of its AWM Sensors and Sensor Control Systems. Phillips Aff., ¶¶ 3–4. Keer and its activities appear, at best, to be tangential to this litigation; certainly, they are irrelevant for the purpose of establishing the center of gravity and proper forum for this litigation.

21. Some courts have gone so far as to hold that no deference is to be given to a plaintiff's choice of forum in cases involving a foreign plaintiff and an American defendant. *See, e.g., Lambton Mfg.*

witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1952–53, 100 L.Ed.2d 517 (1988) (quoting *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843).

In this action, the parties do not dispute the characterization of the issue. This action involves a claim for patent infringement, governed by Federal patent law, 35 U.S.C. § 1 *et seq.* The issues relating to Honeywell's alleged infringement of Patent 768 require analysis of facts, documents and testimony relating to the design, development and production of the Honeywell's AWM Sensors and Sensor Control Systems. *See* 35 U.S.C. § 271 (listing activities which constitute infringement). As Honeywell has demonstrated by its submission of factually specific affidavits, development of these facts are far more easily developed in Minnesota than in New Jersey.

The Honeywell AWM Sensors were originally designed in Minneapolis in Honeywell's Sensors and Systems Development Center. Leonard Aff., ¶ 5 Lanyi Aff., ¶ 5. Those persons responsible for the original design of the Honeywell AWM Sensors—Robert Higashi, Robert Johnson and Philip J. Bohrer—are also located in Minnesota. Lanyi Aff., ¶ 6. As well, James Holman, the person who developed the manufacturing process for the Honeywell AWM Sensors, is located in Minneapolis. *Id.,* ¶ 9. With regard to the manufacture and marketing of the Honeywell

*Ltd. v. Young,* No. 91–3499, 1992 WL 5275, *2 (E.D.Pa. 10 Jan. 1992) (when "one of the parties is foreign, the citizen party's district is favored over the foreign plaintiff's choice of forum"); *L.C. Baron,* 678 F.Supp. at 103 (policy supporting preference to plaintiff's choice of forum does not exist in cases brought by foreign plaintiffs with no "home venue" in United States). Nevertheless, because Honeywell has established that the balance of private and public interests "strongly favors" disturbing Ricoh's choice of forum and transferring this case to Minnesota, *see infra* at pp. 483–88, such a rule need not be adopted here.

AWM Sensors, Honeywell lists eleven key witnesses, all of whom are located in either Minneapolis or in Freeport, Illinois. *See id.,* ¶ 9; *see also supra* n. 11. Significantly, *no* witnesses with regard to the design, development, manufacture or marketing of the Honeywell AWM Sensors appear to be located in New Jersey. Lanyi Aff., ¶¶ 9, 11.

With regard to the Honeywell Sensor Control Units which incorporate the allegedly infringing AWM Sensors, the Microcel system was designed in Minneapolis and the Excel System was designed in Arlington Heights, Illinois. As a whole, the Honeywell Sensor Control Units are manufactured in Minneapolis. Leonard Aff., ¶¶ 4, 8. Again, all relevant witnesses reside in either Minnesota or in Illinois. *See* Leonard Aff., ¶ 8 (citing by name, title and responsibility six witnesses, all residing in Minnesota, who are witnesses to the design, development, manufacture and marketing of the Honeywell Sensor Control Units); *see also supra* n. 14. Again, it appears that *no* witnesses with regard to the Honeywell Sensor Control Units are located in New Jersey.

The same is true for relevant documentary evidence in this action. All documents relating to the original design and development of the Honeywell AWM Sensors, including engineering and laboratory notebooks, are located in Minneapolis. Lanyi Aff., ¶¶ 5, 11. All documents relating to the manufacture and marketing of the Honeywell AWM Sensors are located in Minneapolis and in Freeport, Illinois. *Id.,* ¶ 8; Alvarez Aff., ¶ 4. Similarly, the majority of documents relating to the design, manufacture and marketing of the

Honeywell Sensor Control Systems are located in Minneapolis and in Arlington Heights. Leonard Aff., ¶ 9. Significantly, no relevant or responsive documents, with regard to either the Honeywell AWM Sensors or the Honeywell Sensor Control Systems, appear to be located in New Jersey.[22] Lanyi Aff., ¶¶ 8, 11; Alvarez Aff., ¶ 6; Phillips Aff., ¶¶ 3–4.

■ Although Ricoh does not bear any burden of persuasion on this motion for transfer, the convenience of potential non-party witnesses must nevertheless be considered and balanced. Significantly, Ricoh has not indicated the presence of a single non-party witness in New Jersey or otherwise who would be inconvenienced by transfer of this action to Minnesota. In fact, Ricoh has failed to submit by affidavit the names of any witnesses—even employee witnesses—in New Jersey. Although Ricoh generally claims its employees would be inconvenienced by requiring them to travel to Minnesota for trial, it has failed to provide the names of any such witnesses, the employment positions and responsibilities of those witnesses or the proposed testimony those witnesses would provide.

■ Even accepting the contention that witnesses on behalf of Ricoh will come from Japan,[23] Ricoh is still a Japanese corporation located in Japan. Its witnesses are already inconvenienced by having to travel thousands of miles from their homes to testify. Minnesota is no more inconvenient for these witnesses than New Jersey.[24] In contrast, by

22. Ricoh has neither disputed the location of the documents in Minneapolis and Illinois nor has it offered any evidence indicating that relevant documents are located in New Jersey.

Ricoh does argue, however, that transfer to Minnesota is inappropriate because many of Honeywell's documents and witnesses are located in Illinois rather than Minnesota. *See* Opp. Brief at 4–5, 16. This argument is misguided. Simply because evidence may be present in a forum other than Minnesota does not mean that New Jersey is an appropriate forum for this litigation. In fact, even though some of Honeywell's documents and witnesses are located in Illinois, the facts remain that (1) a significant amount of documents and witnesses are located in Minneapolis and (2) no documents or witnesses appear to be in New Jersey. As well, Illinois

is plainly closer to Minnesota than to New Jersey.

23. This contention is not self-evident. Ricoh fails not only to provide the names of any such witnesses, it also suggests that "the bulk of evidence and testimony" it will employ in its patent infringement case will consist of expert testimony, *rather than employee witnesses.* Opp. Brief at 16.

24. Ricoh argues:

[Honeywell] incorrectly states that a transfer to Minnesota will not burden Ricoh's witnesses. There is only one "direct" flight daily [ (seven weekly) ] between Tokyo and Minneapolis, and that flight makes an en route stop in Seattle. In contrast, there are direct, non-stop flights

virtue of its factually specific affidavits, Honeywell has demonstrated that trial of this case in New Jersey would cause inconvenience not otherwise necessary.[25] With almost all of Honeywell's relevant documents and witnesses located in Minnesota or in Illinois, trial in Minnesota would require only one, rather than both, parties to this litigation to be inconvenienced. When a transfer motion would aid the movant and not disadvantage the opponent, transfer is appropriate. *Filmtec Corp. v. Allied–Signal, Inc.*, 13 U.S.P.Q.2d 1979, 1983, 1989 WL 201603 (D.Del.1989); *S.C. Johnson*, 571 F.Supp. at 1187; *Pall*, 523 F.Supp. at 452–53. Moreover, as one court has observed:

> From an economic standpoint it certainly makes sense to conduct a trial ... where only one party and witnesses have to travel rather than where both parties have to travel.

*Lambton*, 1992 WL 5275 at *2; *see also S.C. Johnson*, 571 F.Supp. at 1187 ("maintenance of suit in district in which one of the parties resides [is] preferable").

Contrary to Ricoh's suggestion, *see* Opp. Brief at 12, this is not a case where transfer simply shifts the inconvenience of litigation from one party to another. *Ballard*, 700 F.Supp. at 801. Honeywell has demonstrated that trial in New Jersey would cause significant inconvenience to its business and to its employees who would be witnesses. In contrast, by choosing to bring this litigation, Ricoh has accepted the fact that litigation will occur in a forum thousands of miles from its home turf and will cause it significant inconvenience. In light of Ricoh's failure to provide factually specific affidavits to the contrary, there is no reason to believe that trial in Minnesota is any more inconvenient to Ricoh than trial in New Jersey. *See Ballard*, 700 F.Supp. at 801.

In sum, Honeywell has demonstrated that the balance of private interests "strongly favors" transfer of this action to the District of Minnesota. As a foreign plaintiff, Ricoh has no claim to "home turf" in New Jersey and is not entitled to an enhanced presumption in favor of its choice of forum. New Jersey, moreover, has little or no connection with the operative facts of this litigation. The design, development, manufacture and marketing of Honeywell's allegedly infringing sensor products occurred in Minnesota and Illinois, not

---

between Tokyo and New York City area airports daily, a total of 33 per week. The round trip flight between Tokyo and Newark is nearly 3 hours less than the flight time between Tokyo and Minneapolis.... The witness thus will be *greatly* inconvenienced if they are forced to travel to New Jersey.
Opp. Brief at 13 n. 3 (emphasis added) (citing Abate Aff., ¶ 7); *see also* Asano Decl., ¶ 13.

This argument barely deserves a response. Whether travelling to Minnesota or to New Jersey, Ricoh's unspecified witnesses will still be required to travel thousands of miles and a minimum of twelve hours in travel time each way. *See* Abate Aff., ¶ 7. While there are fewer flights between Minneapolis and Tokyo than between the New Jersey area and Tokyo, there are still *daily* flights to and from Minneapolis and Tokyo. While flights between Minneapolis and Tokyo must stop in Seattle, these flights are still *direct* flights. To suggest that the differences highlighted by Ricoh amount to "great" inconvenience is simply disingenuous. *See S.C. Johnson*, 571 F.Supp. at 1187 (rejecting argument that infrequent flights amount to significant inconvenience).

**25.** Ricoh argues that transferring this case to Minnesota "would merely shift the inconvenience from Honeywell witnesses to Ricoh witnesses and is improper." Opp. Brief at 12. Ricoh states: "A transfer of the case to Minnesota would greatly interfere with the ability of Ricoh's employee witnesses to carry out their employment responsibilities by withdrawing them from [Ricoh Corp. New Jersey] facilities." *Id.* at 13; *accord* Asano Decl., ¶ 13.

Ricoh offers *no* factual support to bolster this argument of inconvenience. It gives no indication as to the identities, positions, responsibilities or knowledge of any of its purported employee witnesses. Nor does it explain why the ability of its witnesses to "carry out their employment responsibilities" or to communicate with Tokyo would be "gravely" impaired by their presence in Minnesota.

This lack of factual support, as embodied in affidavits, can be contrasted with the information supplied by Honeywell. Honeywell has provided, in affidavit form, the names of its key witnesses, their positions within Honeywell and the likely subjects of their testimony. *See supra* at nn. 11, 14. Honeywell provided specific factual support for the argument that trial in New Jersey would interfere with its witness employees' ability to do their jobs and perhaps would interfere with its business. For instance, Honeywell's affidavits indicate that a number of Honeywell's proposed witnesses are departmental and even division supervisors. Ricoh has provided no such data.

in New Jersey. Based on the lack of any contrary evidence presented by Ricoh, it is reasonable to assume development of the Gas Detector and Patent 768 occurred in Japan.

As for access to sources of proof, the majority of Honeywell's possible witnesses work or reside in Minnesota or in Illinois. Transfer will enhance the ease of discovery given the location of these witnesses and documents. Although it is possible to move documents to New Jersey for trial, such efforts will increase the direct and indirect costs of and inconvenience associated with litigation in this District. As for sources of proof to be presented by Ricoh, Ricoh has failed either to name any specific witnesses or to specify the location of its documents. Accordingly, there is no reason to believe that trial in Minnesota is any more inconvenient for Ricoh than trial in New Jersey. In light of these reasons and the other considerations discussed above, Honeywell has met its burden of proof to show transfer is appropriate and more convenient for the witnesses, the parties and the trial. *See Levinson,* 14 U.S.P.Q.2d 1064; *Ballard,* 700 F.Supp. at 801; *Clopay,* 527 F.Supp. at 736.

D. Public Interest

▮▮▮ As the Third Circuit stated in *Lony I,* the public interest factors relevant to a determination of the propriety of transfer include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

886 F.2d at 640 (quoting *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6). The Third Circuit also stated: "In evaluating the public interest factors the district court must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of the conduct to plaintiff's chosen forum.'" *Lacey I,* 862 F.2d at 48 (quoting *Van Cauwenberghe,* 486 U.S. at 529, 108 S.Ct. at 1953); *see also Lony II,* 935 F.2d at 612.

Although a number of these criteria are inapplicable in the present case, it appears that Minnesota has a greater interest in this litigation than New Jersey.

### 1. Local Interests

Honeywell maintains its principal place of business in Minnesota. Answer, ¶¶ 2, 12; Lanyi Aff., ¶ 2. Minnesota, therefore, has a compelling interest in regulating the conduct of businesses in its state. In addition, as previously discussed, the locus of this action is based largely in Minnesota by virtue of the fact that the design, development, manufacture and marketing of Honeywell's AWM Sensors and Sensor Control Systems occurred largely in Minnesota. Because Minnesota is the locus of the majority of alleged culpable conduct, Minnesota has a strong public interest in adjudicating this dispute. *Lacey I,* 862 F.2d at 48; *Mediterranean Golf,* 783 F.Supp. at 849–50. It does not appear that any comparably culpable conduct occurred in New Jersey.[26] *Mediterranean Golf,* 783 F.Supp. at 849–50; *see supra* at pp. 482–83.

### 2. Burden of Jury Duty

The burden of jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." *Ferens v. John Deere Co.,* 494 U.S. 516, 529–30, 110 S.Ct. 1274, 1282–83, 108 L.Ed.2d 443 (1990) (citing *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843); *Klauder & Nunno Enterpris-*

---

26. As previously discussed, limited sales of an infringing product within a forum are not particularly significant in determining the locus of culpable conduct in a patent infringement case. *See supra* at pp. 482–83. The majority of significant culpable conduct—the design, development, manufacture and marketing of the allegedly infringing Honeywell sensors—did not occur in

New Jersey. Moreover, even if sales were a significant factor in determining local interests, this factor would not favor New Jersey any more than Minnesota. Sales of the Honeywell AWM Sensor and the Honeywell Sensor Control Systems also appear to have occurred in Minnesota. Lanyi Aff., ¶ 3; Leonard Aff., ¶¶ 4, 7–8.

*es, Inc. v. Hereford Assocs., Inc.,* 723 F.Supp. 336, 351 (E.D.Pa.1989). New Jersey jurors should not be burdened with adjudicating a matter concerning allegations of patent infringement stemming from conduct which is/ was largely localized in Minnesota and Illinois. *See Pain,* 637 F.2d at 792 (jury duty should not be imposed, nor local dockets clogged by, cases with little relation to jurisdiction). This factor too weighs in favor of transfer to Minnesota.

### 3. *Related Litigation/Interests of Justice*

Another significant criteria in determining the advisability of transfer is whether transfer would promote the interests of justice. *Pall,* 523 F.Supp. at 453. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Id.; accord Continental Grain,* 364 U.S. at 26, 80 S.Ct. at 1474–75 Transfer in such a circumstance has numerous benefits. Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results. *Ballard,* 700 F.Supp. at 801; *Pall,* 523 F.Supp. at 453.

 In this instance, there is a related litigation pending in Minnesota. On 14 December 1992, Honeywell filed a declaratory judgment action in Federal District Court in Minnesota, seeking an order that its sensor products did not infringe on Ricoh's Patent 768. Moving Brief at 3 n. 2, 16. Obviously, this declaratory judgment action was filed

after this patent infringement action. When two suits involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit. *AT & T,* 736 F.Supp. at 1308; *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 708 F.Supp. 1440, 1447 (D.N.J.1989); *Pall,* 523 F.Supp. at 453.

The circumstances of this case warrant departure from the first-to-file rule. Both cases concern the same issues and will require the same sources of proof. Given the location of a large number of relevant witnesses and documents in Minnesota, as well as the total lack of any such evidence in New Jersey, the enhanced convenience offered by trial in Minnesota is sufficient to overcome the first-to-file rule. *See, e.g., EMS–American Grilon,* 15 U.S.P.Q.2d at 1475; *Pall,* 523 F.Supp. at 453; *K–Tel Int'l, Inc. v. Zuro,* 176 U.S.P.Q. 464 (D.Minn.1971). In addition to judicial and litigation efficiency, the interests of justice are served by transfer to Minnesota because such a transfer eliminates the possibility of inconsistent rulings from this court and from the court in Minnesota. *Chrysler Capital Corp. v. Whoehling,* 663 F.Supp. 478, 484 (D.Del.1987).

### E. Filing of Suit in Minnesota

 For a transfer to be proper, the transferee forum must be one in which the suit "might have been brought." 28 U.S.C. § 1404(a); *see Shutte,* 431 F.2d at 25 (3d Cir.); *AT & T,* 736 F.Supp. at 1305; *Sandvik,* 724 F.Supp. at 306. There is no question that the action against Honeywell could have originally been brought in the District of Minnesota.[27] Both personal jurisdiction

---

27. Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b). *See Ballard,* 700 F.Supp. at 798 (citing *Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957)). This section provides:

> Any civil action for patent infringement may be brought in a judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

*Id.* Technically, under this section, Ricoh could not have brought this action against Keer in the District of Minnesota. Keer does not reside in Minnesota for jurisdictional purposes, nor does it have a regular and established place of business in Minnesota. Nevertheless, because (1) this action could and should have been brought against Honeywell—the prime defendant in this case—in Minnesota, (2) Ricoh's action against Keer concerns the same legal issues as the action against Honeywell, (3) Keer has consented to venue in

and venue are proper in the District of Minnesota. Moving Brief at 19–20; Reply Brief at 14; *see also* 28 U.S.C. § 1400(b). Honeywell maintains its principal place of business in Minnesota and, as discussed above, has committed acts of alleged infringement in Minnesota.[28] In addition, because this case involves application of Federal patent law, subject matter jurisdiction in the District of Minnesota is appropriate under 28 U.S.C. §§ 1331(a) and 1338(a).[29]

Accordingly, the private and public interests in this action weigh in favor of transfer to Minnesota. Moreover, Honeywell has met its burden showing the District of Minnesota is an adequate and a more convenient forum than the District of New Jersey.

*Conclusion*

For the foregoing reasons, the motion of Honeywell to transfer this action to the United States District Court for the District of Minnesota is granted.

the District of Minnesota, *see* Phillips Aff., ¶ 5, and (4) personal jurisdiction exists over Keer in Minnesota, there is no reason to sever Ricoh's action claims against Keer from the action against Honeywell to be transferred to the District of Minnesota. While such an action may not fit within the technical constraints of 28 U.S.C. § 1400(b), it promotes judicial economy and avoids inconsistent judicial determinations of the same legal question. *See Continental Grain*, 364 U.S. at 26, 80 S.Ct. at 1474 ("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent"). *C.f. AT & T*, 736 F.Supp. at 1308–13 (public interest in transferring case to forum of related case outweighs private interests which counsel against transfer).

28. An act of infringement for venue purposes is defined by 35 U.S.C. § 271 as the unauthorized making, using, or selling of a patented invention. *See id.; see also Ballard*, 700 F.Supp. at 799; *Alco Standard Corp. v. Tennessee Valley Auth.*, 448 F.Supp. 1175, 1182 (W.D.Tenn.1978).

29. Ricoh argues that it has no minimum contacts with Minnesota and is not subject to personal jurisdiction in that forum. Opp. Brief at 21. Ricoh thus urges that transfer to Minnesota is inappropriate. *Id.* Contrary to Ricoh's suggestion, this is not the rule. As a plaintiff, Ricoh is/was eligible to bring suit regardless of where it is subject to personal jurisdiction, including in the District of Minnesota. Indeed, it is personal jurisdiction over a *defendant* that is significant for venue purposes. This basic principle does not change simply because Ricoh opposes transfer of its case to Minnesota.

Ricoh further argues that "this is 'clearly a case in which the alternative forum is so distant or unfriendly that transfer will have an unfair impact on Plaintiff.'" Opp. Brief at 22 (quoting *AT & T*, 736 F.Supp. at 1307). This argument too is without merit. Whether this case is tried in the District of New Jersey or the District of Minnesota, uniform Federal patent law will be applied, as will the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Ricoh's claim will be subject to the same standards and law in either forum.