**OSTEOTECH, INC., Plaintiff,**

v.

**GENSCI REGENERATION SCIENCES, INC. and GenSci Laboratories, Inc., Defendants.**

No. CIV. A. 98–237.

United States District Court, D. New Jersey.

May 4, 1998.

Dorsey & Whitney, by Frederick A. Nicoll, Paramus, NJ, Dorsey & Whitney, by Neil E. McDonell, Donald E. Watnick, Scott M. Kareff, New York, NY, for Plaintiff.

Sterns & Weinroth, by Karen A. Confoy, Trenton, NJ, Lyon & Lyon, by Mary S. Consalvi, Lois M. Kwasigroch, Stephen S. Korniczky, San Diego, CA, for Defendants.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on plaintiff's motion for a preliminary injunction, against a similar action in the Central District of California, and defendants' motion to dismiss, transfer or stay the case at bar. Plaintiff Osteotech, Inc. ("Osteotech") alleges here that by making, using and selling two products called DynaGraft Gel and DynaGraft Putty, defendants GenSci Regeneration Sciences, Inc. ("GenSci Canada") and GenSci Laboratories, Inc. ("GenSci Labs") are infringing its U.S. Patent, No. 5,290,558 (" '558 Patent"). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### STATEMENT OF THE CASE

#### I. Procedural History

This action ("New Jersey Action") is one of two related actions, the other having been filed in California ("California Action"). Although both actions involve the infringement of Osteotech's '558 Patent, the California Action is broader. In the California Action, GenSci Labs seeks a declaratory judgment that it is not infringing Osteotech's '558 Patent, and it also claims that Osteotech is infringing its U.S. Patent Nos. 4,394,370 (" '370 Patent"), 4,472,840 (" '840 Patent"), and 5,707,962 (" '962 Patent") by making, using and selling its Grafton FLEX product. As well, the California Action involves three

state law claims by GenSci Labs alleging that Osteotech (1) intentionally interfered with a business relationship between GenSci Labs and the American National Red Cross Tissue Service ("ARC"); (2) negligently interfered with GenSci Labs' prospective economic advantage with ARC; and (3) induced ARC to breach a contract that it had with GenSci Labs. GenSci Canada, however, is not a party in the California action.

Osteotech filed the New Jersey Action on January 16, 1998, and GenSci Labs filed the California Action on January 28, 1998. Although this action was first filed, the complaint was first served in the California Action. On April 8, 1998, Judge Stotler entered an Order in the California Action granting in part and denying in part Osteotech's (the defendant in that action) motion to dismiss, transfer or stay that action. In essence, Judge Stotler determined that a stay of the California Action, pending this Court's resolution of GenSci Labs' and GenSci Canada's motion to dismiss the New Jersey Action for lack of personal jurisdiction, best served the interests of justice.

#### II. Jurisdictional Facts

GenSci Labs is incorporated in the State of Washington and has its principal place of business and corporate headquarters in Irvine, California. It is a biomedical company engaged in the development and manufacture and sale of products utilizing bone and tissue regeneration technology for use in the periodontal and orthopedic industries. These products include the DynaGraft Gel and DynaGraft Putty products alleged to infringe Osteotech's '558 Patent. (DeMesa Decl., ¶¶ 3–4). GenSci Labs asserts that it does not do business in New Jersey but, rather, conducts all of its business activities involving DynaGraft Gel and DynaGraft Putty at its facilities in Irvine, California. (Id., ¶ 3).

GenSci Labs is a relatively small company. It currently has only 22 full-time employees, 18 of whom live and work in Orange County, California. Five of GenSci Labs' six senior officers live and work in California. (Id., ¶¶ 5–6). GenSci Labs is wholly owned by its parent, GenSci Canada, which has its corpo-

rate offices in Vancouver, British Columbia. GenSci Labs asserts t at it maintains a separate existence from GenSci Canada. Its business activities are separate and distinct. (Trotman Decl., ¶¶ 3–4; DeMesa Decl., ¶¶ 7–8).

GenSci Canada asserts that it does not manufacture, use or sell its DynaGraft products in the United States, let alone in New Jersey. (*Id.*) Neither company has any facilities, employees, registered agents or real property in New Jersey, and neither has a regular or established place of business or maintains an office, telephone listing, bank account or manufacturing facilities in New Jersey. (Trotman Decl., ¶¶ 3–4; DeMesa Decl., ¶¶ 3, 6, 8, 12).

Osteotech alleges that GenSci Canada has had repeated business contacts with Osteotech in New Jersey relating to the subject matter of the present action. In support of these allegations, Osteotech proffers letters written to it by officers of GenSci Canada, namely Dr. Jim Trotman, President and Chief Executive Officer of GenSci Canada, indicating an interest in possible business dealings and visitations with Oteotech. (Jeffries Decl., ¶¶ 4–5). Osteotech alleges that two meetings were held at its Shrewsbury, New Jersey facilities in 1993–94 to discuss the possibility of collaborating on a project called the HCMB Sponge and that present at those meetings from GenSci Canada were Trotman; Ray Cottrel, GenSci Canada's Chief Operating and Financial Officer; and representatives of GenSci Canada's predecessor, Biocoll Medical Group ("Biocoll"). Additionally, similar inconclusive negotiations resumed in 1996 and early 1997; however, the meetings between the parties were conducted in Chicago, Illinois and the correspondence regarding those negotiations does not specifically relate to the '558 Patent. (Exhs. C–1 through C–9 at Apr. 20, 1998 oral argument).

In addition, Osteotech alleges that GenSci Labs placed in the stream of commerce in New Jersey the precise products that Osteotech alleges are infringing its '558 Patent. (Jeffries Decl., ¶ 6). For example, GenSci Labs allegedly sold products infringing the '558 patent to a hospital in Toms River, New Jersey on November 26, 1997. (*Id.*, ¶ 5). Osteotech indicates, as well, that both GenSci Labs and GenSci Canada have advertised the products at issue in this lawsuit in publications circulated in New Jersey. (*Id.*, ¶ 7 and Exh. 6). Osteotech also proffers an Internet advertisement allegedly utilized by both defendants (with the alleged infringing products listed thereupon), which is easily accessed from computers everywhere, including New Jersey. (*Id.*, Exh. 7).

## ANALYSIS

### I. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Standard Pursuant to Fed.R.Civ.P. 12(b)(2)

The rules of the state in which the district court sits will determine whether it may assert personal jurisdiction over a non-resident defendant. Fed.R.Civ.P. 4(e). New Jersey Court Rule 4:4–4(e) functions as the State's long-arm statute and extends New Jersey's jurisdictional reach to the fullest limits permitted by the U.S. Constitution, subject only to due process of law. *Charles Gendler & Co. v. Telecom Equipment Corp.*, 102 N.J. 460, 469, 508 A.2d 1127 (1986). Pursuant to the fourteenth amendment's Due Process Clause, a nonresident defendant is amendable to suit in a particular forum when she has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The nature of contacts must be such as to provide the defendant with "fair warning" that it could be "haled into court in the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 225, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Because both GenSci Canada and GenSci Labs have raised a jurisdictional objection, Osteotech bears the burden of demonstrating that each company's contacts with New Jer-

sey are sufficient to support an exercise of personal jurisdiction. *Mellon Bank (East) PSFS Nat. Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Although Osteotech will ultimately have to establish jurisdiction by a preponderance of the evidence, *see Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992), at this juncture it need only make a *prima facie* showing that the Court has personal jurisdiction over defendants. A plaintiff makes a *prima facie* showing if he establishes, "with reasonable particularity, sufficient contacts between the defendant and the forum state." *Mellon Bank,* 960 F.2d at 1223.

■ A plaintiff may establish jurisdiction in a forum either by showing that the defendant has continuous and systematic contacts with the forum (general jurisdiction) or that the cause of action arose out of defendant's activities within the forum state (specific jurisdiction). *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To establish either general or specific jurisdiction, Osteotech must show that each of defendant's contacts with New Jersey are shaped by purposeful conduct making it reasonable for it to anticipate being haled into court here. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. A single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Covenant Bank for Savings v. Cohen,* 806 F.Supp. 52, 55 (D.N.J.1992). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit of the protection of its laws." (*Id.* at 56, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Once it is clear that a defendant has minimum contacts with the forum state, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174

(quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

## B. General Jurisdiction

■ To establish general jurisdiction, a plaintiff must demonstrate that the defendant has significantly more than bare minimum contacts with the forum state. An exercise of general jurisdiction is consistent with due process only when the plaintiff has satisfied the "rigorous" burden of establishing that the defendant's contacts are continuous and substantial. *See Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990); *Exton v. Our Farm, Inc.,* 943 F.Supp. 432, 437 (D.N.J.1996). As long as the defendant maintains continuous and substantial contacts with the forum generally, the contacts need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper. *International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *Provident National Bank v. California Federal Savings and Loan Assoc.,* 819 F.2d 434, 438 (3d Cir.1987).

■ Osteotech does not attempt to invoke general jurisdiction over GenSci Labs and GenSci Canada. Rather, its theory of personal jurisdiction is based on an exercise of specific jurisdiction and, accordingly, its arguments are directed to contacts relating to the claims in this lawsuit. "Here, both GenSci defendants have had contacts with the State of New Jersey that relate to the subject matter of this law suit, thereby making them subject to personal jurisdiction in this Court." (Opp. Br. at 9). Further, the Court determines that general jurisdiction over defendants is lacking. Neither maintains the sort of continuous and substantial contacts with this forum necessary for an exercise of general jurisdiction to be appropriate.

As to GenSci Canada, two meetings that occurred over four years ago involving preliminary discussions regarding a possible collaboration with Osteotech do not amount to continuous and systematic contacts with New Jersey. Nor do two later meetings in Chicago. Further, correspondence between Biocoll and Osteotech unrelated to the subject

matter of this lawsuit does not amount to GenSci Canada's purposefully availing itself of New Jersey and, moreover, would not lead GenSci Canada to expect that it could be haled into court in this State. As to GenSci Labs, a single sale of its product to a New Jersey hospital, without more, does not constitute continuous and substantial contacts with the forum state. As to both defendants, the print advertisements and the Internet website advertisement alone are insufficient proof that they purposefully availed themselves of New Jersey. *See Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J.1997) (and cases cited therein) (determining that an Internet website is insufficient to confer personal jurisdiction under a general jurisdiction theory when the information provided serves as an advertisement and not as a means of conducting business) and *Gehling v. St. George's School of Medicine,* 773 F.2d 539, 542 (3d Cir.1985) (holding that advertising in national publications "does not constitute 'continuous and substantial' contacts with the forum state.").

### C. Specific Jurisdiction

Specific personal jurisdiction over a nonresident defendant is appropriate when plaintiff's cause of action arises directly from the defendant's actions in the forum state. *Giangola,* 753 F.Supp. at 155. Courts must examine the relationship among the defendant, the forum and the cause of action to determine whether the defendant had "fair warning" that it could be brought to suit here. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A court will presume the existence of fair warning if the defendant directed its activities at residents of the forum. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). The defendant need not have entered the forum state when it conducted these activities, but its forum-related conduct must form the basis of the alleged injuries and resulting litigation. *Helicopteros,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404.

### 1. GenSci Labs

This Court has specific jurisdiction over defendant GenSci Labs. GenSci Labs' sale of its allegedly infringing DynaGraft product directly to a hospital in New Jersey (*see* Jeffries Decl., ¶ 6 and Exh. 5) is enough to support this exercise of personal jurisdiction. The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1570–71 (Fed.Cir.1994); *North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1578–79 (Fed.Cir.1994). The rationale underlying such a rule is not only that such a defendant clearly had a "fair warning" that it could be haled into court into the forum state but, as well, that the forum in which an allegedly infringing product is sold clearly has an interest in prohibiting the importation of infringing articles into its territory.

GenSci Labs' argument that its single sale to New Jersey represents only a tiny fraction of its total sales is not persuasive. Such an argument confuses the nature of the contacts involved in analyzing specific and general jurisdiction. Were Osteotech attempting to invoke an exercise of general jurisdiction based on GenSci Labs' single sale to New Jersey, then the fact that such a sale represents only .05% of GenSci Labs' total sales would be relevant. As the Court previously determined, a single sale of its product to a New Jersey hospital, without more, does not constitute continuous and substantial contacts with the forum state and, accordingly, an exercise of general jurisdiction over GenSci Labs would be inappropriate. The question now, however, is whether an exercise of specific jurisdiction would be appropriate. Where a defendant's forum-related conduct forms the basis of the alleged injuries and resulting litigation, the contacts need not be continuous and substantial. Rather, it is enough that GenSci Labs sold its product in New Jersey only once, because the product allegedly infringes Osteotech's '558 Patent, which is the subject matter of the instant litigation.

### 2. GenSci Canada

This Court does not have specific jurisdiction over defendant GenSci Canada.

Osteotech attempts to invoke specific jurisdiction over GenSci Canada based not on any sale of DynaGraft but, rather, on the fact that "GenSci Canada representatives have engaged in repeated meetings in New Jersey with Osteotech's representatives regarding the business which is the subject matter of this present infringement action." (Opp. Br. at 14). The relationship of these meetings to this litigation is tangential, at best. In order for an exercise of specific jurisdiction over GenSci Canada to be appropriate, its forum-related conduct must form the basis of the alleged injuries and resulting litigation. *Helicopteros*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404. In its one-count Complaint, Osteotech claims that by making, using and selling DynaGraft Gel and DynaGraft Putty, defendants are infringing its '558 Patent. This claim does not arise out of either the two meetings over four years ago between representatives of GenSci Canada's predecessor (Biocoll) and Osteotech in New Jersey, or the subsequent meetings in Chicago, Illinois. Nor is it predicated upon correspondence related to those negotiations. Those meetings and communications involved a possible business collaboration with regard to the HCMB Sponge. The collaboration never came to fruition, and the HCMB Sponge was never released on the market. (Second Trotman Decl., ¶ 4).

The Court determines that whether or not any of the DynaGraft products were discussed at these meetings is irrelevant; rather, what is important is that GenSci Canada's forum-related conduct—its attending these negotiations—could not arguably constitute infringement of the '558 Patent, the only claim in the Complaint. Thus, even if the Court were to accept Osteotech's conclusory allegation in its brief that the HCMB Sponge is the same product that GenSci Canada currently markets and distributes as the DynaGraft Sponge, which allegedly infringes its '558 Patent, the mere fact that the HCMB Sponge was the subject of discussions between Osteotech and GenSci Canada does not support an exercise of specific jurisdiction over GenSci Canada. First and fore-most, nowhere does the Complaint in this action allege that the DynaGraft Sponge infringes the '558 Patent. Rather, it alleges only that the DynaGraft Gel and DynaGraft Putty products infringe it. In addition, Osteotech has provided no evidence that GenSci Canada has manufactured, used or sold *any* of these products—DynaGraft Gel, DynaGraft Putty *or* the DynaGraft Sponge—in the United States, let alone in New Jersey.[1] Finally, the forum-related conduct at issue here—the 1993 and 1994 meetings—took place prior to the date that the '558 Patent was issued and, thus, could not have formed the basis of the instant action, as Osteotech had no enforceable right in the subject matter of this litigation at the time those meetings took place, and GenSci Canada could not have expected to be haled into court in New Jersey for infringement of a patent that did not yet exist.

Osteotech's reliance on *Saxholm v. Dynal, Inc.*, 938 F.Supp. 120 (E.D.N.Y.1996), and *North American Philips*, 35 F.3d 1576, is misplaced. Both cases involve a "stream of commerce" theory of specific jurisdiction. Although the parameters of that theory are often unclear, most courts agree that where a manufacturer places a product into the forum state via an established distribution chain, an exercise of specific jurisdiction is appropriate. *Saxholm*, 938 F.Supp. at 124–25. Thus, where a foreign corporate defendant manufactures a product which is distributed in the forum by a wholly-owned subsidiary, an exercise of specific jurisdiction over the foreign defendant-manufacturer may be appropriate. Here, there are no allegations, much less any evidence, that GenSci Canada and GenSci Labs are part of the same distribution chain. To the contrary, the President and Chief Executive Officer of GenSci Labs, James DeMesa, certifies that *all* of the activities surrounding the DynaGraft Gel and Putty products are conducted by GenSci Labs at its facilities in Irvine, California. (DeMesa Decl., ¶ 8). This includes research, development, planning, manufacturing, quality assurance, quality control, shipping, receiving,

---

1. *Compare* DeMesa Decl., ¶ 8; Trotman Decl., 3–4; Second Trotman Decl., ¶ 8 (averring that neither Biocoll nor GenSci Canada has ever manufactured, used or sold any DynaGraft products or the HCMB Sponge in the United States).

storage, warehousing, purchasing, inspection, etc. (*Id.*)

Furthermore, recall that GenSci Labs itself only sold allegedly infringing products in New Jersey on one occasion. There is absolutely no evidence—under a stream of commerce theory or otherwise—that *any* of GenSci Canada's products ever entered New Jersey. Stated simply, the stream of commerce theory does not change the fact that due process requires that a defendant have *purposeful* minimum contacts with the forum state. While introducing manufactured goods into the stream of commerce may constitute a "contact," that contact must nevertheless be purposefully directed at the forum state. Here, there is no evidence that, on the only occasion to which Osteotech can point that *either* of defendants' allegedly infringing products entered this State, GenSci Canada had good reason to know the likely destination of the product. Accordingly, an exercise of specific jurisdiction over GenSci Canada would be inappropriate.

■ As a final matter, the Court briefly addresses Osteotech's argument regarding the advertisements and the Internet website as it relates to the validity of an exercise of specific personal jurisdiction over GenSci Canada. (*See* Jeffries Decl., Exhs. 6 and 7). First, this argument seems more geared to the propriety of an exercise of general jurisdiction. Second, with respect to the print advertisements (*id.*, Exh. 6), the Third Circuit has consistently held that advertising in national publications does not constitute purposefully availing oneself of a particular forum. *See Gehling*, 773 F.2d at 542; *see also Giangola*, 753 F.Supp. at 156. With respect to the Internet website, this Court agrees with the reasoning and conclusion in *Weber*, 977 F.Supp. at 333–34, that advertising on the Internet falls under the same rubric as advertising in a national magazine. Quoting from *Hearst Corp. v. Goldberger*, 1997 WL 97097 at *1 (S.D.N.Y. Feb.26, 1997), the court in *Weber* noted that "a finding of jurisdiction ... based on an Internet website would mean that there would be nationwide (indeed, worldwide) jurisdiction over anyone and everyone who establishes an Internet website" and concluded that such nationwide jurisdiction would be wholly inconsistent with traditional personal jurisdiction case law. *Weber*, 977 F.Supp. at 333.

Finally, the Court disagrees with Osteotech that the Internet advertisement in this case differs from that involved in *Weber* because it is more "interactive." (*See* Opp. Br. at 15 n.5). Despite Osteotech's allegation that the website contains a toll-free number that interested consumers can call to order products (*see id.*), the Court cannot find such a phone number listed.[2] In any event, that a phone number or e-mail address may be listed on the website encouraging interested persons to contact the company for more information has no more of an impact on any particular forum than a website without such information and, moreover, does nothing to alleviate the concern that a finding of jurisdiction based on an Internet website would amount to a finding of worldwide jurisdiction over anyone who establishes a website. The fact remains that Osteotech has produced no evidence to suggest that GenSci Canada (or, for that matter, GenSci Labs) has ever contracted to sell any of its goods or services over the Internet to anyone in New Jersey (or elsewhere).

■ As this Court does not have personal jurisdiction over GenSci Canada, it must either be dismissed from this action or, alternatively, the entire action may be transferred to a forum in which both defendants are subject to personal jurisdiction and venue is proper. The Court determines that, while venue is proper in an action between plaintiff and GenSci Labs in this district pursuant to 28 U.S.C. § 1400(b) and, thus, the action could go forward here without GenSci Canada, this action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).[3] The Court's analysis of the factors warranting a transfer of this ac-

---

2. It is likely that Osteotech confused the Internet advertisement (attached to the Jeffries Decl. at Exh. 7) with the print advertisements (attached at Exh. 6), which do have a toll-free number listed thereupon.

3. As the parties acknowledge, if the Court were in a situation governed by 28 U.S.C. § 1406(a), transfer could be considered under that statute.

tion is set forth below but, before turning to that analysis, the Court first notes that the "first-filed rule" does not apply here. Putting to one side the question of whether this action was, in fact, the "first-filed,"[4] the Court determines that, although the New Jersey and California Actions are similar, they are not the same. The California Action involves three patent claims not at issue in the New Jersey Action and, as well, three California tort claims. Additionally, GenSci Canada is not a party in the California action. Accordingly, the Court determines that the "first-filed" rule does not apply.

## II. Motion to Transfer

### A. Standard Pursuant to 28 U.S.C. § 1404(a)

Title 28 U.S.C. § 1404(a) permits a district court to transfer a civil action to another district. The statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The first two prerequisites for a valid transfer under § 1404(a) are that venue must be proper in both the transferor and transferee court. In the instant action, venue properly lies in this forum pursuant to 28 U.S.C. § 1400(b), because defendant GenSci Labs is subject to personal jurisdiction here and, thus, is said to "reside" in this judicial district. See 28 U.S.C. § 1391(c); see also Telebrands Direct Response Corporation v. Ovation Communications, Inc., 802 F.Supp. 1169, 1175 n. 3 (D.N.J.1992). Venue is also proper in the Central District of California, as GenSci Labs has its principal place of business there and, moreover, defendants concede that GenSci Canada is subject to personal jurisdiction in

California. (See Defendants' Br. at 12; Reply Br. at 9).

■ The moving party bears the burden of showing that the alternate forum is *more* convenient, not just that the present forum is inadequate. *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F.Supp. 1294, 1305 (D.N.J.1990). Whether a case should be transferred is a decision made on a case-by-case basis. *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In making such a determination, the district court has the discretion to weigh a number of factors, which encompass both public and private concerns. The factors pertaining to private interests include the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and the cost of attendance of willing witnesses. *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 480 (D.N.J. 1993); *see also Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The other group of factors include the public interest in the administration of courts and the adjudication of cases and having cases adjudicated at home and familiarity of the forum with the applicable law. *Ricoh*, 817 F.Supp. at 480; *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839.

Moreover, in patent infringement actions, "as a general rule, the preferred forum is that which is the *center of gravity* of the accused activity." *Ricoh*, 817 F.Supp. at 481 n. 17 (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D.Ill. 1983), adding emphasis and citing additional cases). In finding that "center of gravity," a district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Ricoh*, 817 F.Supp. at 481–82 n. 17 (quoting *S.C. Johnson*, 571 F.Supp. at 1188). Appropriate considerations include the loca-

---

4. Although Judge Stotler determined in the California Action that, under Ninth Circuit precedent, the New Jersey Action was the first-filed, Third Circuit precedent may dictate a different result. Recall that, although the Complaint was first filed in this Court, it was first *served* in California. As defendants have pointed out, some courts in this circuit have found that, "[i]t is not the first case filed which has precedence, but 'the court first *obtaining jurisdiction* of the parties and the issues' which should proceed with the litigation." *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F.Supp. 35, 37 (E.D.Pa.1983) (quoting *Omni–Exploration, Inc. v. McGookey*, 520 F.Supp. 36, 37 (E.D.Pa.1981) and adding emphasis). Accordingly, a persuasive argument can be made in this circuit that the California Action was the "first filed."

tion of a product's development, testing, research and production. Also relevant is the place where marketing and sales decisions are made, rather than where limited sales activity has occurred. (*Id.; see also Levinson v. Regal Ware, Inc.*, 14 U.S.P.Q.2d 1064, 1065 n. 3 (D.N.J.1989) (attached to Korniczky Decl., at Exh. E)).

### B. Application

■ Osteotech chose New Jersey as the forum for the adjudication of this dispute. While the plaintiff's choice of its home forum is owed considerable deference, the choice is not dispositive. *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 307 (D.N.J.1989). "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *National Micrographics Systems, Inc. v. Canon U.S.A., Inc.*, 825 F.Supp. 671, 681 (D.N.J.1993) (citations omitted). Nevertheless, it is defendants that bear the burden of showing that a transfer is warranted. The Court determines that defendants have met that burden here and, accordingly, determines that this action should be transferred to the Central District of California.

### 1. Center of Gravity of the Accused Activity

There is little question that the hub of activity with respect to the DynaGraft Gel and Putty products is the Central District of California. It is there that GenSci Labs maintains its headquarters and principal place of business, manufactures the allegedly infringing products, and conducts research and development. As well, GenSci Canada maintains that it has adequate minimum contacts to California. Furthermore, the operative events underlying Osteotech's infringement allegations occurred in Irvine, California. In contrast, New Jersey has no meaningful connection to the production of the allegedly infringing products. Neither GenSci Canada nor GenSci Labs has offices, manufacturing facilities or any other facilities in this State. Further, only one sale of the allegedly infringing products occurred in New Jersey. While this may subject GenSci Labs to personal jurisdiction in this district,

it certainly does not make New Jersey a hub of activity with respect to the allegedly infringing products. *See Boreal Laser, Inc. v. Coherent, Inc.*, 22 U.S.P.Q.2d 1559, 1560 (S.D.N.Y.1992) (attached to Kornizky Decl. at Exh. C) (sales alone are not enough to establish a material connection to the forum state); *Ricoh*, 817 F.Supp. at 481–81 n. 17 (quoting *S.C. Johnson*, 571 F.Supp. at 1188) (relevant is the place where marketing and sales decisions are made, rather than where limited sales activity has occurred).

### 2. Private Interest Factors

The location of potential witnesses and relevant documents militates in favor of transfer. Because the operative events underlying Osteotech's allegation of infringement occurred in California, the majority of the witnesses and documents that will be needed to prove infringement are undoubtedly located in California. To be sure, the officers and employees of GenSci Labs who will testify in this action all reside and work within the Central District of California. Osteotech's attempt to direct the Court's attention to the presence of *its own* product processing and development in New Jersey is unavailing, as it is based upon a faulty premise. Osteotech erroneously argues that, in this lawsuit, both plaintiff and defendant are the alleged infringers. (*See* Opp. Br. at 29–30). While that may be true of both the California and New Jersey Actions taken together, in *this lawsuit*—which is the only one at issue in this transfer motion—defendants are the only alleged infringers. GenSci Labs and GenSci Canada do not allege in the New Jersey Action that Osteotech infringes any patent.

Also misplaced is Osteotech's argument that there are non-party witnesses in Washington, D.C. that will testify with respect to GenSci Labs' California tort claims who will be less inconvenienced by having to travel to New Jersey than California. Those tort claims are simply not at issue in this action. Accordingly, this Court is not persuaded by Osteotech's assertion that the testimony of the Chief Operating Officer of ARC, who lives in the D.C. area, "will be indispensable to GenSci's California state law claims."

(Opp. Br. at 32). This Court is not faced with choosing the better forum in which to litigate the California and New Jersey Actions together, nor is it concerned with where it is more convenient to try any of the individual claims in the California Action. Rather, the only question before this Court is whether the interests of justice would be better served by having the sole claim involved in *this action*—Osteotech's patent infringement claim—litigated here or in California.

Osteotech's argument that the non-party witnesses at the hospital in Toms River, New Jersey, to which GenSci Labs sold allegedly infringing products, are important to the proof of its claim is equally unavailing. GenSci Labs does not dispute that it sold products to that hospital (*see* DeMesa Decl., ¶ 14); rather, it disputes that the products it sold were infringing. In short, the witnesses and documents that may help Osteotech prove the sale to the hospital in New Jersey—a matter which may not need to be proven at all, as GenSci Labs apparently does not dispute it—are not important to Osteotech's patent infringement claim, which is the real dispute at hand. Clearly, the witnesses and documents necessary to prove that claim are, on the whole, located in California.

Finally, that it will be substantially less disruptive to the business activities of GenSci Labs if this action is tried in California rather than in New Jersey is another factor which militates in favor of transfer. *See, e.g., Weinberger v. Retail Credit Co.*, 345 F.Supp. 165 (E.D.Pa.1972). Stated another way, the inconvenience to GenSci Labs and GenSci Canada of litigating this action in New Jersey is greater than the inconvenience to Osteotech of litigating in the Central District of California. GenSci Labs is a relatively small company whose employees are essential to its day-to-day operations. Their removal to this district would severely limit the company's ability to carry on is business. (DeMesa Decl., ¶ 11). On the contrary, Osteotech has a significant presence in California, and Cali-

fornia is responsible for approximately 20% of its domestic sales of Grafton. (*Id.*, ¶ 14).

### 3. Public Interest Factors

Both California and New Jersey clearly have an interest in litigating this dispute and, given that the only claim involved arises under federal law, neither forum is any more or less familiar with the applicable law. These public interest factors are neutral. Also to consider, however, is the public interest in the preservation of judicial resources. The validity of the '558 Patent is at issue in both the New Jersey and California Actions and would be resolved in either action, but the other claims at issue between these parties in the California Action are not a part of the New Jersey litigation.[5] Because it would be a waste of judicial resources (and the parties' time and energy) for the validity of the '558 Patent to be resolved in both forums, and because the California Action engulfs the New Jersey Action in that respect, the Court determines that the efficiency factor favors transferring this action to California.

### III. Motion for a Preliminary Injunction

Having determined herein that this action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a), the Court does not address Osteotech's motion for a preliminary injunction. That motion is dismissed as moot.

### CONCLUSION

For the foregoing reasons, the Court determines that defendant GenSci Labs is subject to personal jurisdiction in this district but GenSci Canada is not. The Court further determines that the interests of justice are better served by transferring this action to the Central District of California pursuant to 28 U.S.C. § 1404(a) rather than by dismissing defendant GenSci Canada and allowing this suit to proceed in its absence. *See Goldlawr v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), permitting such a transfer even as to a defendant over whom there was no *in personam* jurisdiction in the transferor forum. Accordingly, defendants'

5. Even if they could be repleaded here, there is delay inherent in such a procedure; moreover, the California tort claims are best addressed by a court more familiar with California law.

motion to transfer is granted, and plaintiff's motion for a preliminary injunction is denied for the reason that it is now moot.

### ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 4th day of May, 1998, **ORDERED** that:

1. Defendants' motion to transfer is hereby granted, and this matter is herewith transferred in its entirety to the United States District Court for the Central District of California; and

2. Plaintiff's motion for a preliminary injunction is hereby denied for the reason that it is now moot.